## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FRANKLIN CAPITAL FUNDING, LLC,

       Plaintiff,

v.

ACE FUNDING SOURCE, LLC,

       Defendant.

Case No. 2:20-cv-12059-TGB-APP

Hon. Terrence G. Berg

Magistrate Anthony P. Patti

---

### DEFENDANT ACE FUNDING SOURCE, LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), (3) AND (6)

Defendant, Ace Funding Source, LLC, by and through its undersigned counsel, for its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) ("Motion") relies upon the law and arguments set forth in its Brief in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6).

As required by Local Rule 7.1, counsel for FundKite contacted counsel for Plaintiff, Franklin Capital Funding, LLC, on August 6, 2020 to seek concurrence in the relief sought in this Motion.  In the communication, counsel for FundKite explained the nature of the Motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

**WHEREFORE**, FundKite respectfully requests that this Honorable Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2),(3) and (6) and grant such

other and further relief as this Court deems just and proper considering the facts

and circumstances of this case.

Respectfully submitted,

VARNUM LLP

By: _/s/ Shanna M. Kaminski_
     SHANNA M. KAMINSKI (P74013)
     160 W. Fort St., 5th Floor
     Detroit, MI  48226
     (313) 481-7332
     smkaminski@varnumlaw.com

Dated:  August 6, 2020                *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FRANKLIN CAPITAL FUNDING,
LLC,

        Plaintiff,

v.

ACE FUNDING SOURCE, LLC,

        Defendant.

Case No. 2:20-cv-12059-TGB-APP

Hon. Terrence G. Berg

Magistrate Anthony P. Patti

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2020, I filed *Defendant Ace Funding Source, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) and Brief in Support of Motion to Dismiss* via the Court ECF system and a copy of same was served upon such parties as are entitled to automatic service via the Court's ECF system.

VARNUM LLP

By: */s/ Wendy R. Kyles*
        WENDY R. KYLES, Assistant to
        SHANNA M. KAMINSKI (P74013)
        160 W. Fort St., 5th Floor
        Detroit, MI  48226
        (313) 481-7332
        wrkyles@varnumlaw.com

Dated:  August 6, 2020        *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FRANKLIN CAPITAL FUNDING,
LLC,

        Plaintiff,

v.

ACE FUNDING SOURCE, LLC,

        Defendant.

Case No. 2:20-cv-12059-TGB-APP

Hon. Terrence G. Berg

Magistrate Anthony P. Patti

---

**ACE FUNDING SOURCE, LLC'S BRIEF IN SUPPORT**
**OF MOTION TO DISMISS PURSUANT TO**
**FED. R. CIV. P. 12(b)(2), (3) AND (6)**

# TABLE OF CONTENTS

I.    STATEMENT OF ISSUES PRESENTED ......................................................i

II.   CONTROLLING AUTHORITIES.................................................................. ii

III.  INTRODUCTION .......................................................................................1

IV.  FACTS .......................................................................................................2

V.   ARGUMENT ..............................................................................................6

     A.    This Case Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) Because the Court Does Have Personal Jurisdiction Over Ace Funding ...................................................................6

     B.    The Case Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3) Because this is the Improper Venue for this Action ..................................................................................11

     C.    This Case Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Because Franklin Capital Has Failed to State a Claim Upon Which Relief May be Granted........................................13

           i.     Applicable Legal Standard.......................................13

           ii.    The Tortious Interference Claims Must be Dismissed Because They are Not Plausible.............................14

           iii.   The Conversion Claim Must be Dismissed Because it is Not Plausible.......................................................19

           iv.   The Injunctive Relief Claim Should be Dismissed Because it is Not a Cause of Action, But Rather, a Claim for Relief ........................................................21

           v.    The Declaratory Relief Claim Must be Dismissed Because it is Not an Independent Cause of Action..................21

VI.  CONCLUSION.............................................................................22

## I.    STATEMENT OF ISSUES PRESENTED

**Issue One:**  Whether the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over Defendant, Ace Funding Source, LLC ("Ace Funding").

**Issue Two:**  Whether the court should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) because this is the improper venue for the action.

**Issue Three**:   Whether Plaintiff, Franklin Capital Funding, LLC's ("Franklin Capital") conversion claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because, even if its security interest was deemed to have priority over Ace Funding's security interest, Ace Funding took the funds free of the Franklin Capital's security interest pursuant to MCL §440.9332.

**Issue Four:**  Whether Franklin Capital's tortious interference with contract claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it is not plausible.

**Issue Five:**  Whether Franklin Capital's tortious interference with business relationship or expectancy claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it is not plausible.

**Issue Six:**  Whether Franklin Capital's injunction claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it is not a cause of action.

**<u>Issue Seven</u>:**  Whether Franklin Capital's declaratory relief claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it is not an independent cause of action.

## II.   <u>CONTROLLING AUTHORITY</u>

<u>*Cases*</u>                                                                         <u>*Page*</u>

*Alix Partners, LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016) ...........................9

*Am. Greetings Corp. v. Cohn*, 839 F.2d 1164 (6th Cir. 1988) ..................................7

*Amegy Bank Nat. Ass'n v. Deautsche Bank Corp.*, 917 F. Supp.2d
    1228 (M.D. Fla. 2013) ...................................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662; 129 S. Ct. 1937; 173 L. Ed. 2d 868
    (2009)...............................................................................................................13

*Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 695 N.W.2d 521
    (2005)...............................................................................................................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544; 127 S. Ct. 1955; 167
    L.Ed. 2d 929 (2007).................................................................................13, 14

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan*, 217
    Mich. App. 687; 552 N.W.2d 919 (1996) .....................................................17

*Business Credit Leasing, Inc. v. Danor Corp.*, 4 F.3d 993 (6th Cir.
    1993) ...............................................................................................................19

*Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) ..................................10

*Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*,
    692 F.3d 469 (6th Cir. 2012) .........................................................................10

*Cunningham v. MEC Enterprises, Inc.,* No. 10-13409, 2011 WL
    1869911, at *1–2 (E.D. Mich. Apr. 20, 2011), *report and
    recommendation adopted,* No. 10-13409, 2011 WL 1842866
    (E.D. Mich. May 16, 2011) .....................................................................11, 12

*Daimler AG v. Bauman*, 571 U.S. 117; 134 S. Ct. 746; 187 L.Ed.2d.
    624 (2014)..........................................................................................................7

*Dalley v. Dykema Gossett*, 287 Mich. App. 296; 788 N.W.2d 679
    (2010)...............................................................................................................17

*Davis v. United States*, 499 F.3d 590 (6th Cir. 2007)............................................21

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911
(9th Cir. 1990) ......................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915
(2011)................................................................................................8, 9

*Healix Infusion Therapy, Inc. v. Heartland Home Infusions, Inc.*, 733
F.3d 700 (7th Cir. 2013) .......................................................................18

*Health Call of Detroit v. Atrium Home_& Health Care Servs., Inc.*,
268 Mich. App. 83;706 N.W.2d 843 (2005) ...................................17

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................8

*Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*,
108 F.3d 658 (6th Cir. 1997) ...........................................................21

*Keybank Nat. Ass'n v. Ruiz Food Prods., Inc.*, No. CV 04–296–MHW,
2005 WL 2218441, at *5 (D. Idaho Sept. 9, 2005) ......................20

*Knight Enterprises*, 299 Mich. App. 279; 829 N.W.2d 348 (2013) .......15

*Magna Powertrain De Mexico S.A. De C.V. v. Momentive
Performance Materials USA LLC*, 192 F. Supp. 3d 824 (E.D.
Mich. 2016).............................................................................................7

*McClain v. Deutsche Bank Nat'l Tr. Co.*, No. 18-10452, 2018 WL
2560418, at *4 (E.D. Mich. June 4, 2018) ...................................23

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936) .......6

*Michigan Coalition of Radioactive Material Users, Inc. v.
Griepentrog*, 954 F.2d 1174 (6th Cir. 1992) .................................8

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675 (6th Cir. 2012)...........7

*Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401
F.2d 374 (6th Cir. 1968) ........................................................................9

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991)........................6

*Thompson v. JPMorgan Chase Bank, N.A.*, 563 Fed. Appx. 440 (6th
Cir. 2014)..............................................................................................21

*Walden v. Fiore*, 571 U.S. 277; 134 S. Ct. 1115; 188 L.Ed.2d 12 (2014).................................................................................8, 9

*Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974) ..................................6, 7

*Youn v. Track, Inc.*, 324 F.3d 409 (6th Cir. 2003)....................................................10

### **Statutes and Court Rules**

28 U.S.C. §1391(b) ........................................................................................12, 13

28 U.S.C. §1391(b)(1) and (3)..................................................................................12

28 U.S.C. §1391(c)(2)................................................................................................12

28 U.S.C. § 2201 .......................................................................................................21

Fed. R. Civ. P. 12(b)(2)................................................................................6, 11, 22

Fed. R. Civ. P 12(b)(3)..........................................................................11, 13, 22

Fed. R. Civ. P. 12(b)(6)...........................................................................13, 22

Fed. R. Civ. P. 4(k)(1)................................................................................................7

MCL §440.9332 .......................................................................................................19

MCL § 600.711 ..........................................................................................................7

MCL § 600.715 ..........................................................................................................7

### III.   **INTRODUCTION**

This action is meritless.  Franklin Capital claims that Ace Funding interfered with a contract and its business expectations or relationships and converted its collateral.  However, it is clear from the face of the Complaint that Ace Funding could not have had knowledge of or notice of the loan Franklin Capital gave to non-party, Superior Logistics of Ohio, LLC ("Superior Logistics"), or its security interest.  This is because both came ***after*** Ace Funding entered into its contract with Superior Logistics, Superior Logistics granted it a security interest, and Ace Funding filed its UCC-1 Financing Statement.

 If any party to this action has interfered with an existing contract or business expectancy it was Franklin Capital.  Franklin Capital knew at the time it loaned money to Superior Logistics that Ace Funding had a business relationship with Superior Logistics because, among other reasons, Ace Funding filed its UCC-1 Financing Statement months before Franklin Capital loaned money to Superior Logistics.

Franklin Capital tries to justify its preposterous claims by pointing to the fact that it was assigned a UCC-1 Financing Statement that was filed by another entity prior to Ace Funding's UCC-1 Financing Statement being filed.  However, that assignment is clearly invalid and occurred months after Ace Funding entered into its contract with Superior Logistics and filed its UCC-1 Financing Statement.

In addition to all of these issues, Franklin Capital has initiated this action in a state that has no connection whatsoever to the claims asserted. For the reasons more fully stated below, the Court must dismiss this action in its entirety pursuant to Fed. R. Civ. P. 12(b)(2),(3) and (6).

## IV.   FACTS

### *Superior Logistics of Ohio, LLC and Ace Funding Source, LLC*

Superior Logistics is an Ohio limited liability company. Its principal place of business is in Lancaster, Ohio. Copies of its Articles of Incorporation and Registration are attached as **Exhibit 1**.

Ace Funding is in the business of providing funding to businesses.[1] *See* Declaration of Henry Guttman attached as **Exhibit 2**. It is located in Jericho, New York. Exhibit 2, ¶4. Ace Funding does not market or advertise its funding products in the State of Michigan. Exhibit 2, ¶5.

On December 4, 2019, Superior Logistics and Ace Funding entered into an Agreement for the Purchase and Sale of Future Receipts ("Agreement"). Exhibit 2, ¶7. The Agreement is governed by and is to be construed in accordance with the laws of the State of New York and courts sitting in New York are designated as the

---

[1] Franklin Capital attempts to connect Ace Funding to companies highlighted in various scandalous articles it attached to the Complaint, despite the content of the articles having no bearing on the actual claims that Franklin Capital attempts to state and there being zero support for the inference that Ace Funding is now, or has ever been, engaged in the conduct complained of in the articles. It will quickly become clear that the reason Franklin Capital spends so much time attempting to connect Ace Funding to the companies highlighted in the articles is simply to distract this Court from the fact that its claims are completely meritless. Ace Funding is mentioned nowhere in the articles.

proper jurisdiction and venue for all claims related to the Agreement.  Exhibit 2, ¶8.

Pursuant to the terms of the Agreement, Ace Funding was to obtain the receipts, as that term is defined in the Agreement, it purchased from Superior Logistics under the Agreement by making withdrawals from a bank account designated by Superior Logistics into which it was to deposit the receipts. Superior Logistics designated a bank account at Vinton County National Bank (the "Bank Account").  Exhibit 2, ¶9. Vinton County National Bank only has locations in the State of Ohio. Exhibit 2, ¶10.

Superior Logistics also granted Ace Funding a security interest in all of its assets as part of the transaction.  Exhibit 2, ¶12.  On January 23, 2020, Ace Funding filed a UCC-1 Financing Statement with the State of Ohio to perfect its security interest.  Exhibit 2, ¶13.

### *Franklin Capital Funding, LLC*

Franklin Capital is a Delaware limited liability company, with its principal place of business in Oakland County, Michigan that makes and services small business loans.  *See* Complaint, ¶¶1,7.  Franklin Capital filed a UCC-1 Financing Statement with the State of Ohio on February 18, 2020 asserting it had a security interest in all assets of Superior Logistics.  *See* Complaint, ¶30.  Then, on March 4, 2020, Franklin Capital loaned money to Superior Logistics and Superior Logistics

granted a security interest in all of its assets to Franklin Capital.  *See* Complaint, ¶22.

Franklin Capital alleges in the Complaint that it purchased an existing obligation Superior Logistics had with TopRock Funding, LLC ("TopRock") on March 4, 2020 and that TopRock assigned the obligation and its UCC-1 Financing Statement it filed with the State of Ohio on December 12, 2019 to Franklin Capital. *See* Complaint,  ¶¶18,20.   However, the assignment that is attached to the Complaint is from an entity called Chrome Capital, LLC, not TopRock, and is clear from public records that Chrome Capital, LLC and TopRock are completely different entities.  Copies of the registrations for each entity attached as **Exhibit  3**. Chrome Capital, LLC is not listed as an assumed or fictitious name of TopRock.

Franklin Capital was fully aware at the time it loaned the money to Superior Logistics that Superior Logistics had an outstanding obligation to Ace Funding because Ace Funding filed its UCC-1 Financing Statement months prior to Franklin Capital loaning any money to Superior Logistics.  Franklin Capital also alleges in its Complaint that it engages in thorough underwriting prior to loaning money to ensure that there is adequate security available to it.  *See* Complaint, ¶8-10 ("Of critical importance to Franklin in its underwriting of loans is to ensure that its business customer is in a position to repay its loan and that there is adequate security available to Franklin to safeguard repayment.").  Assuming this is true, it

should have been made aware of Superior Logistics' obligation to Ace Funding during its thorough underwriting process.

It is also clear from the allegations in the Complaint that Franklin Capital knew that Ace Funding would be withdrawing funds from Superior Logistic's bank account in connection with the obligation. *See* Complaint ¶13 ("[T]he funding company debits the business customer's bank account for a certain percentage of the business customer's business either daily or weekly until the purchase price is repaid.").   Franklin Capital nevertheless decided to enter into the transaction with Superior Logistics.  Likely with the idea already in mind that it would be filing this meritless action in an effort to eliminate the obligation.[2]

### *The Instant Action*

On April 3, 2020, Franklin Capital initiated the instant action in the Oakland County Circuit Court by filing a five count Complaint.  Franklin Capital filed a proof of service indicating the Complaint was served on June 30, 2020.  On July 30, 2020, Ace Funding timely removed the action to this Court.

Like every other Complaint Franklin Capital has filed against funding companies within the last ten (10) months, Franklin Capital alleges that Ace

---

[2] It is worth noting that Franklin Capital has filed virtually the same complaint at least five other times over the last ten (10) months in the Oakland County Circuit Court against other companies that provided funding to its borrowers. The sole purpose of these actions is to try to obtain a competitive edge, not to recover for actual injuries sustained.  Indeed, the actions are always filed shortly after Franklin Capital provides the loan and the amount withdrawn is always $25,000 or less (but the request for treble damages often puts it over this Court's jurisdictional threshold).

Funding converted Franklin Capital's collateral when it withdrew funds from the Bank Account that allegedly consisted of and constituted Franklin Capital's collateral.  The Complaint further alleges that Ace Funding intentionally interfered with its contract and business expectations or relationship with Superior Logistics when it withdrew the funds from the Bank Account.  Finally, Franklin Capital asks for a declaratory judgment that it has a first priority security interest, even though its security interest was granted after Ace Funding's and TopRock did not even assign its security interest to Franklin Capital. The assignment relied upon by Franklin Capital is from Chrome Capital, LLC not TopRock.

These claims must be dismissed by this Court pursuant to Fed. R. Civ. P. (b)(2), (3) and (6).

## V.    ARGUMENT

### A.    This Case Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) Because the Court Does Not Have Personal Jurisdiction Over Ace Funding

When personal jurisdiction is challenged in a motion filed under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).  When the motion is supported by properly documented factual assertions, the plaintiff "may not stand

on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Ibid.* The Court may opt to decide the motion based only on the affidavits or declarations, allow discovery of the jurisdictional facts, or, if factual disputes need resolving, hold an evidentiary hearing. *Ibid.*

In a case where subject matter jurisdiction is based on diversity of citizenship, federal courts look to state law to determine personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). If a Michigan court would have jurisdiction over a defendant, so would a federal district court sitting in Michigan. *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 753, 187 L.Ed.2d. 624, 756 (2014) (explaining that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons").

Michigan law recognizes two bases for personal jurisdiction over corporations: general jurisdiction, Mich. Comp. Laws § 600.711, and specific jurisdiction (called "limited personal jurisdiction" in state law parlance), Mich. Comp. Laws § 600.715. There is no Michigan statute that addresses personal jurisdiction over limited liability companies like Ace Funding. However, the personal jurisdiction rules governing corporations generally have been applied to limited liability companies as well. *See Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828

(E.D. Mich. 2016)(dismissal of action for lack of personal jurisdiction over defendant).

Michigan's so-called Long Arm Statute defines the scope of its limited personal jurisdiction.   But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). Michigan interprets its Long Arm Statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

General jurisdiction exists if a defendant's contacts with a State "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Franklin Capital has not even alleged facts in the Complaint that would lead to the conclusion that Ace Funding has continuous and systematic contacts with Michigan and Ace Funding has demonstrated that it does not.  *See* Exhibit 2. Therefore, there is no basis for general jurisdiction.

"'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (i.e., an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')."

*Walden*, 134 S. Ct. at 1122 n.6 (quoting *Goodyear*, 564 U.S. at 919). The Sixth Circuit historically has applied three criteria to guide this analysis, which it enunciated in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), often referred to as the "minimum contacts" analysis:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.3d at 381.

"Purposeful availment is the constitutional touchstone of personal jurisdiction and it exists where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State and where the defendant's conduct and connection with the forum are such that he should reasonable anticipate being haled into court there." *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016).

Ace Funding does not market or advertise its funding products in Michigan, or any other state for that matter, and is located in New York. All of Ace Funding's contracts provide that any actions related to them must be brought in a court sitting in New York. Therefore, there is no reason why Ace Funding would anticipate being haled into court in Michigan.

But even if the Court were to assume that Franklin Capital could somehow establish purposeful availment (it can't), it is clear that this case did not arise from any activity of Ace Funding in Michigan.  Ace Funding contracted with a business located in Ohio and withdrew funds from the Bank Account that was located in Ohio.  The *only* connection to Michigan whatsoever is that Franklin Capital's principal place of business is in Michigan.  *See* Complaint, ¶1.  That fact is not even relevant to whether the Court has personal jurisdiction over Ace Funding.

The "arising from" element is not satisfied unless "the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). Franklin Capital cannot demonstrate that "the cause of action is 'related to' or 'connected with' the defendant's forum contacts" because none of the actions Franklin Capital complaints of occurred in Michigan. The contract between Ace Funding and Superior Logistics was not entered into in Michigan and the funds were not withdrawn from a bank account located in Michigan. *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003).

The Sixth Circuit has emphasized that "[i]t is not enough that there be some connection between the in-state activity and the cause of action — that connection must be *substantial*." *Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 692 F.3d 469, 472-73 (6th Cir. 2012). "The defendant's contacts with the forum state must relate to the operative facts and nature of the controversy." *Ibid.*

Franklin Capital further cannot demonstrate that Ace Funding's contacts in Michigan, if any, are substantial as they relate to the controversy: the withdrawal of funds that purportedly consisted of and constituted Franklin Capital's collateral. "An action arises out of contacts with the forum if, 'but for' those contacts, the cause would not have arisen." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990). Here, Ace Funding had no contact with Michigan. The funds were withdrawn from a bank account located in Ohio and Ace Funding contracted with an Ohio resident.

In short, Franklin Capital simply cannot demonstrate what is necessary for this Court to have personal jurisdiction over Ace Funding. Therefore, this case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

### B. The Case Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3) Because this is the Improper Venue for this Action

On a motion to dismiss for improper venue under Fed. R. Civ. P 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Cunningham v. MEC Enterprises, Inc.,* No. 10-13409, 2011 WL 1869911, at *1–2 (E.D. Mich. Apr. 20, 2011), *report and recommendation adopted,* No. 10-13409, 2011 WL 1842866 (E.D. Mich. May 16, 2011). "The plaintiff must show that venue is proper for each claim and as to each defendant in order for the court to retain the

action." *Id*.  "The court may examine facts outside of the complaint" when ruling on the motion to dismiss."  *Id*.

A civil action may only be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of this action is situated,[3] or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  28 U.S.C. §1391(b).

First, this is not the judicial district in which Ace Funding resides.  With respect to Ace Funding, residency for the purposes of venue is "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. §1391(c)(2).  As already demonstrated in the previous section, this Court does not have personal jurisdiction over Ace Funding thus, this is not the proper venue for this action pursuant to 28 U.S.C. §1391(b)(1) and (3).

Second, none of the events giving rise to the claims asserted by Franklin Capital occurred in Michigan and the property at issue in this case is not, and has

---

[3] To make this determination, courts "focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." *Cunningham,* 2011 WL 1869911, at *1–2.

never has been, located in Michigan.  Franklin Capital alleges that Ace Funding interfered with its contract with Superior Logistics and converted its collateral when Ace Funding made withdrawals from the Bank Account in accordance with the terms of its contract with Superior Logistics.  The Bank Account is located in Ohio.  The funds that were withdrawn by Ace Funding and are not located in Michigan.

As none of the requirements of 28 U.S.C. §1391 can be met, this is the improper venue for this action and the action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

> ### C. This Case Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Because Franklin Capital Has Failed to State a Claim Upon Which  Relief <u>May be Granted</u>

> #### i. Applicable Legal Standard

Fed. R. Civ. P. 12(b)(6)  permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted.  To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940–41, 173 L. Ed. 2d 868 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 167, L.Ed. 2d 929 (2007).   "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Two working principles underlie *Twombly.* First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* "Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere legal conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### ii. The Tortious Interference Claims Must be Dismissed Because They are Not Plausible

In Count II of the Complaint, Franklin Capital asserts a tortious interference with an existing contractual relationship claim.  In Count III of the Complaint, Franklin Capital asserts a tortious interference with a business relationship or expectancy claim.  Each claim will be addressed separately.

#### a. *Franklin Capital has Failed to State a Claim for Tortious Interference with a Contract*

The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Knight Enterprises*, 299 Mich. App. at 279–80, 829 N.W.2d at 348.   "[O]ne who alleges tortious interference with a contractual relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in the law for the purpose of invading the contractual rights or business relationship of another." *Id.*  "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Id.*  "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.*  "Thus, it is an essential element of a claim of tortious interference with a contract that the defendant 'unjustifiably instigated or induced' the party to breach its contract." *Id.*

In other words, in order to properly plead a claim for tortious interference with a contract against Ace Funding, Franklin Capital must allege enough facts to establish that Ace Funding either (i) committed an act that was so wrongful that it had no justification whatsoever for committing that act, and did so with malice and the intent to induce Superior Logistics to breach its contracts with Franklin Capital, or (ii) committed a lawful act with malicious intent to instigate Superior Logistics to breach its contract.  Franklin Capital has not met these requirements.

Here, the act that Franklin Capital complains of is Ace Funding withdrawing money from the Bank Account.  However, that action is permitted by the contract between Ace Funding and Superior Logistics that Franklin Capital expressly acknowledged in the Complaint.  *See* Complaint, ¶13.  Thus, such an action cannot be said to be unjustified.

Additionally, Franklin Capital has not alleged any facts to establish that the withdrawal of the funds from the deposit account was done with malice.  In fact, the Complaint makes the opposite clear.  It is clear from the Complaint that the purpose of Ace Funding withdrawing the funds from the deposit account was to comply with the terms of the Agreement.

Since Franklin Capital has failed to allege enough facts to establish each and every element of the claim of tortious interference with a contract and the allegations in the Complaint, when taken as true, do not support such a claim, the claim should be dismissed.

> b.  *Franklin Capital Has Not Properly Alleged a Claim for Tortious Interference with a Business Relationship or Expectancy*

"The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional

interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90, 706 N.W.2d 843, 849 (2005). "[I]n order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent. *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 324, 788 N.W.2d 679, 696 (2010).

To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. ***Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference***." *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 366, 695 N.W.2d 521, 538 (2005). *Also see, BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan*, 217 Mich. App. 687, 699, 552 N.W.2d 919, 925 (1996).

The Complaint is devoid of any allegations that withdrawing the funds from the Bank Account was illegal, unethical or fraudulent.  In fact, Franklin Capital acknowledges that there is a business relationship between Ace Funding and Superior Logistics that resulted in Ace Funding debiting funds from Superior Logistic's deposit account.  *See* Complaint, ¶33 ("Superior turned to Ace for

additional funding…").  This can only lead to the inference that the withdrawal of the funds from the Bank Account was indeed done for legitimate business reasons. Therefore, Franklin Capital has failed to allege any facts to establish that withdrawing funds from the Bank Account was illegal, unethical or fraudulent or that Ace Funding's actions were not motivated by legitimate business reasons, which is required to state a claim for tortious interference with future business expectancies.

With respect to the knowledge requirement, Franklin Capital asserts that Ace Funding knew about its contracts with Superior Logistics because of the mere existence of the UCC-1 Financing Statement.  *See* Complaint, ¶63.  However, courts have expressly rejected the idea that the mere existence of a UCC-1 Financing Statement is sufficient to establish knowledge for the purposes of a tortious interference claim.  *See e.g., Healix Infusion Therapy, Inc. v. Heartland Home Infusions, Inc.*, 733 F.3d 700 (7th Cir. 2013).

What's more, it is particularly unclear here how Ace Funding could have had knowledge that Franklin Capital had a relationship with Superior Logistics.  Ace Funding entered into its contract with Superior Logistics on December 4, 2019 and filed its UCC-1 Financing Statement on January 23, 2020.  Franklin Capital, per the allegations in the Complaint, filed did not file a UCC-1 Financing Statement until February 18, 2020 and the invalid purported assignment of the TopRock

Financing Statement to Franklin Capital did not occur until March 4, 2020.  *See*
Complaint, ¶¶20, 30.

As Franklin Capital has failed to allege sufficient facts to establish all
elements of the claim of tortious interference with a business relationship or
expectancy and the allegations, when taken as true, do not support the claim, such
claim should be dismissed.

### iii.    The Conversion Claim Must be Dismissed Because it is not Plausible on its Face

In Count IV of the Complaint, Franklin Capital alleges that Ace Funding
converted its Collateral by withdrawing funds from the Bank Account because
those funds allegedly constituted Franklin Capital's collateral.    *See* Complaint,
¶34,70.  In most cases when there is an unauthorized disposition of collateral the
security interest continues and the transferee takes subject to the security interest,
permitting the secured party to maintain an action for conversion.  *Business Credit
Leasing, Inc. v. Danor Corp.*, 4 F.3d 993 (6th Cir. 1993).  However, pursuant to
the express provisions of Article 9 of the Uniform Commercial Code, when, as
here, funds are transferred from a deposit account, the transferee takes the funds
free of any security interests.  MCL §440.9332(b). *Also see, e.g. Amegy Bank Nat.
Ass'n v. Deautsche Bank Corp.*, 917 F. Supp.2d 1228, 1238 (M.D. Fla. 2013)(The
policy behind UCC §9-332 "derives from the high value placed on the finality of
transactions, the need to minimize the likelihood that a secured party will enjoy a

claim to whatever the transferee purchases with the funds, and the fact that the U.C.C. disfavors the opportunity to upset a completed transaction, or even to place a completed transaction in jeopardy by bringing suit against the transferee of funds ....” [] [D]espite valid concerns for the secured creditor, an interest in ensuring the free flow of funds and in ensuring the finality of a completed transaction, trumps the interests of a secured creditor."); *Keybank Nat. Ass'n v. Ruiz Food Prods., Inc.,* No. CV 04–296–MHW, 2005 WL 2218441, at \*5 (D. Idaho Sept. 9, 2005)("[T]he Court concludes that an innocent transferee takes funds transferred from a deposit account free of a security interest in the collateral of which the funds were proceeds.")

Since the funds were transferred from the Bank Account to Ace Funding, Ace Funding took the funds free and clear of Franklin Capital's security interest (assuming the funds actually constituted its collateral and Franklin Capital had the senior perfected security interest in the collateral as alleged in the Complaint even though it clearly did not).[4]  Without an existing security interest in the funds, an action for conversion cannot be maintained.

---

[4] Again, TopRock did not assign anything to Franklin Capital.  The assignment attached to the Complaint was from Chrome Capital, LLC and the UCC-1 Financing Statement amendment attached to the Complaint that allegedly shows the assignment does not mention TopRock.

**iv.** **The Injunctive Relief Claim Should be Dismissed Because it is Not a Cause of Action, But Rather, a Claim for Relief**

In *Thompson v. JPMorgan Chase Bank, N.A.*, 563 Fed. Appx. 440 (6th Cir. 2014), the United States Court of Appeals for the Sixth Circuit held that injunctive relief is not a cause of action.  Therefore, it is not appropriate for such claim to be listed as a separate count.  Instead, the relief of an injunction should be requested in connection with the actual causes of action alleged, not as a separate count. Thus, this Court should dismiss Count III of the Complaint because it is not a separate cause of action for which relief can be obtained.

**v.** **The Declaratory Relief Claim Must be Dismissed Because it is Not an Independent Cause of Action**

In Count I of the Complaint Franklin Capital seeks a declaration that it has the first priority security interest."  The Declaratory Judgment Act, 28 U.S.C. § 2201, "does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).  "Because a declaratory judgment action is a procedural device used to vindicate substantive rights," a claim for "declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) (citation and quotation marks omitted). Therefore, Franklin Capital is only entitled to declaratory relief if it

alleges a plausible substantive claim. *Id.  Also see, McClain v. Deutsche Bank Nat'l Tr. Co.,* No. 18-10452, 2018 WL 2560418, at *4 (E.D. Mich. June 4, 2018).

Here, the substantive claim that the declaratory relief request relates to is the conversion claim. However, as already demonstrated, the conversion claim is simply not plausible.  If the Court dismisses the conversion claim as it should it must also dismiss the  declaratory relief claim.

## VI.    CONCLUSION

This Court does not have personal jurisdiction over Ace Funding and this action was brought in the improper venue.  As a result, the case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and (3).

Franklin Capital has also failed to state a claim upon which relief can be granted.  Therefore, dismissal of this action is also proper under Fed. R. Civ. P. (b)(6).

Respectfully submitted,

VARNUM LLP

By:  /s/ Shanna M. Kaminski
       SHANNA M. KAMINSKI (P74013)
       160 W. Fort St., 5th Floor
       Detroit, MI  48226
       (313) 481-7332
       smkaminski@varnumlaw.com

Dated:  August 6, 2020                    *Attorneys for Defendant*

# EXHIBIT 1



| DATE | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|------|-------------|-------------|--------|-------|---------|------|------|
| 07/21/2015 | 201520200894 | DOMESTIC FOR PROFIT LLC - ARTICLES OF ORG (LCP) | 125.00 | 100.00 | 0.00 | 0.00 | 0.00 |

**Receipt**

This is not a bill. Please do not remit payment.

SUPERIOR LOGISTICS OHIO LLC
DAVID BURKHOLDER
328 PARK ST
LANCASTER, OH 43130

# S T A T E   O F   O H I O

## C E R T I F I C A T E

### Ohio Secretary of State, Jon Husted

#### 2412547

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**SUPERIOR LOGISTICS OHIO LLC**

and, that said business records show the filing and recording of:

| Document(s) | Document No(s): |
|-------------|-----------------|
| **DOMESTIC FOR PROFIT LLC - ARTICLES OF ORG**<br>Effective Date: 07/20/2015 | **201520200894** |



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 21st day of July, A.D. 2015.

*Jon Husted*

**Ohio Secretary of State**



Form 533A Prescribed by:

**JON HUSTED**
**OHIO SECRETARY OF STATE**
Toll Free: (877) SOS-FILE  (877-767-3453)
Central Ohio: (614) 466-3910
www.OhioSecretaryofState.gov
busserv@OhioSecretaryofState.gov
File online or for more information: www.OHBusinessCentral.com

Mail this form to one of the following:

Regular Filing (non expedite)
P.O. Box 670
Columbus, OH  43216

Expedite Filing (Two business day processing time.
Requires an additional $100.00)
P.O. Box 1390
Columbus, OH  43216

# Articles of Organization for a Domestic
# Limited Liability Company
### Filing Fee: $125

## CHECK ONLY ONE (1) BOX

(1) ☒ Articles of Organization for Domestic
For-Profit Limited Liability Company
(115-LCA)

(2) ☐ Articles of Organization for Domestic
Nonprofit Limited Liability Company
(115-LCA)

Name of Limited Liability Company | Superior Logistics Ohio LLC

Name must include one of the following words or abbreviations:  "limited liability company," "limited," "LLC," "L.L.C.," "ltd., "or "ltd"

Effective Date
(Optional)
mm/dd/yyyy

(The legal existence of the limited liability company begins upon the filing of the articles or on a later date specified that is not more than ninety days after filing)

This limited liability company shall exist for
(Optional)
Period of Existence

Purpose
(Optional) | To provide a superior home delivery experience for our clients and their customers.

**\*\*Note for Nonprofit LLCs**
The Secretary of State does not grant tax exempt status. Filing with our office is not sufficient to obtain state or federal tax exemptions.  Contact the Ohio Department of Taxation and the Internal Revenue Service to ensure that the nonprofit limited liability company secures the proper state and federal tax exemptions. These agencies may require that a purpose clause be provided.

# ORIGINAL APPOINTMENT OF AGENT

The undersigned authorized member(s), manager(s) or representative(s) of

Superior Logistics Ohio LLC

Name of Limited Liability Company

hereby appoint the following to be Statutory Agent upon whom any process, notice or demand required or permitted by statute to be served upon the limited liability company may be served. The name and address of the agent is

David Burkholder

Name of Agent

328 Park St

Mailing Address

| Lancaster | Ohio | 43130 |
|---|---|---|
| City | State | ZIP Code |

# ACCEPTANCE OF APPOINTMENT

The undersigned, David Burkholder named herein as the statutory agent

Statutory Agent Name

for Superior Logistics Ohio LLC

Name of Limited Liability Company

hereby acknowledges and accepts the appointment of agent for said limited liability company

Statutory Agent Signature

Individual Agent's Signature / Signature on Behalf of Business Serving as Agent

By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies that he or she has the requisite authority to execute this document.

**Required**
Articles and original appointment of agent must be signed by a member, manager or other representative.

If authorized representative is an individual, then they must sign in the "signature" box and print their name in the "Print Name" box.

If authorized representative is a business entity, not an individual, then please print the business name in the "signature" box, an authorized representative of the business entity must sign in the "By" box and print their name in the "Print Name" box.

Signature

By (if applicable)

David Burkholder
Print Name

Signature

By (if applicable)

Print Name

Signature

By (if applicable)

Print Name

# Frank LaRose
*Ohio Secretary of State*

Fri Jul 31 2020

**Entity#:** 2412547

**Filing Type:** DOMESTIC LIMITED LIABILITY COMPANY

**Original Filing Date:** 07/20/2015

**Location:** ---

**Business Name:** SUPERIOR LOGISTICS OHIO LLC

**Status:** Active

**Exp. Date:** -

# Agent/Registrant Information

DAVID BURKHOLDER

3160 WEST FAIR AVENUE

LANCASTER OH 43130

07/20/2015

Active

# Filings

| Filing Type | Date of Filing | Document ID |
|---|---|---|
| ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO. | 07/20/2015 | 201520200894 |
| AGENT ADDRESS CHANGE/LIMITED/LIABILITY/PARTNERS | 07/22/2019 | 201920304134 |

**UNITED STATES OF AMERICA**
**STATE OF OHIO**
**OFFICE OF SECRETARY OF STATE**

*I, Frank LaRose, Secretary of State of the State of Ohio, do hereby certify that this is a list of all records approved on this business entity and in the custody of the Secretary of State.*



*Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 31st of July, A.D. 2020*

**Ohio Secretary of State**

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FRANKLIN CAPITAL
FUNDING, LLC,

                     Case No. 2:20-cv-12059-TGB-APP

         Plaintiff,

                     Hon. Terrence G. Berg

v.

                     Magistrate Anthony P. Patti

ACE FUNDING SOURCE, LLC,

         Defendant.

_____

## DECLARATION OF HENRY GUTTMAN
## IN SUPPORT OF MOTION TO DISMISS

I, Henry Guttman, hereby declare and state as follows:

1.    I am an authorized officer of Ace Funding Source, LLC ("Ace Funding"). As an authorized officer of Ace Funding I have access to the books and records of Ace Funding kept in the ordinary course of Ace Funding's business. I make this declaration based upon my review of those records and from personal knowledge.

2.    Ace Funding is a New York limited liability company that was formed under the laws of the State of New York on November 18, 2015.

3.    None of the members of Ace Funding are residents of Michigan.

4.      Ace Funding's principal place of business is its office located in Jericho, New York.

5.      Ace Funding does not market or advertise its funding products in the State of Michigan or in any other state.

6.      All of Ace Funding's contracts provide that they are governed by and are to be construed in accordance with the laws of the State of New York and the courts in the State of New York are selected as the proper jurisdiction and venue for any disputes related to the contract.

7.      On December 4, 2019, Ace Funding and Superior Logistics entered into an Agreement for the Purchase and Sale of Future Receipts ("Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

8.      The Agreement provides that it is to be governed by and construed in accordance with the laws of the State of New York and "courts sitting in New York" are designated as the proper jurisdiction and venue for any suit, action or proceeding related to the Agreement.

9.      Pursuant to the terms of the Agreement, Superior Logistics designated a bank account into which it would deposit the receipts, as that term is defined in the Agreement, purchased by Ace Funding and from which Ace Funding would withdraw the receipts.

10.    Superior Logistics designated a bank account at Vinton County National Bank. Vinton County National Bank only has branches in the State of Ohio. This is reflected on Page 12 of the Agreement.

12.    Superior Logistics granted Ace Funding a security interest in all of its assets under the Agreement.

13.    Ace Funding filed a UCC-1 Financing Statement to perfect its security interest on January 23, 2020.  A true and correct copy of its UCC-1 Financing Statement is attached as **Exhibit B** hereto.

14.    Ace Funding did not learn that Franklin Capital loaned money to Superior Logistics or of the purported assignment of TopRock Funding, LLC's security interest to Franklin Capital until in or about April 2020, after Franklin Capital induced Superior Logistics to breach its agreement with Ace Funding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th date of August, 2020

_____
Henry Guttman

Page **3** of **3**

# Exhibit A



**AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIPTS**

Seller's Legal Name:  SUPERIOR LOGISTICS OHIO LLC

D/B/A:  SUPERIOR LOGISTICS OHIO

Form of Business Entity:  Limited Liability Company        Tax ID:

Street Address:                                City: LANCASTER        State: OH    Zip: 43130

Mailing Address:                               City: LANCASTER        State: OH    Zip: 43130

Primary Contact Name:  DAVID  BURKHOLDER        Title:  owner

Purchase Price: $315,000.00      Specified Percentage: 12%     Purchase Amount: $447,300.00

Periodic Amount: $2,500.00    Frequency:  Daily

Account for the Deposit of All Future Receipts:

Bank:  VINTON COUNTY NATIONAL BANK        Account No:

Effective,     12/04/2019      Seller, identified above, hereby sells, assigns and transfers to Ace Funding Source LLC, located at 366 NORTH BROADWAY, JERICHO, NY 11753 ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") until Seller has received the Purchased Amount.

"Future Receipts" includes all payments made by cash, check, or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business.

As payment for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above.

Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer.

Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee.

Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the Account and the ability to withdraw the Initial Daily Amount.

If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

**Agreement of Seller:** By signing below Seller agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

Seller:  SUPERIOR LOGISTICS OHIO LLC

Agreed to by:  _David Burkholder_
                    (Signature)          Print Name & Title: DAVID  BURKHOLDER  owner

Agreed to by:                             Print Name & Title:
                    (Signature)

**Buyer:**

Agreed to by:                             Title:
                    (Signature)

1. **Delivery of Purchased Amount:** Seller must deposit all Future Receipts into the single business banking account specified above, which may not be used for any personal, family or household purposes (the "Account") and must instruct Seller's credit card processor, which must be approved by Buyer (the "Processor"), to deposit all Payment Card receipts of Seller into them Account. Seller agrees not to change the Account or add an additional Account without the express written consent of Buyer. Seller authorizes Buyer to debit the Daily Amount from the Account each business day by either ACH debit or electronic check. Seller will provide Buyer with all required access codes and login information and agrees not to change them without prior written consent from Buyer. Seller understands that Buyer must have access and login to the Account at all times during the term of this Agreement, and any attempt to block Buyer's access to the Account constitutes an Event of Default under this Agreement. Seller will provide an appropriate ACH authorization to Buyer. Seller understands that it is responsible for either ensuring that the Daily Amount is available in the Account each business day or advising Buyer prior to each daily withdrawal of a shortage of funds. Otherwise, Seller will be responsible for any fees incurred by Buyer resulting from a rejected electronic check or ACH debit attempt, as set forth on Appendix

A. Buyer is not responsible for any overdrafts or rejected transactions that may result from Buyer's debiting any amount authorized under the terms of this Agreement. Seller understands that the foregoing ACH authorization is a fundamental condition to induce Buyer to accept the Agreement. Consequently, such authorization is intended to be irrevocable.

2. **Seller May Request Changes to the Daily Amount:** The initial Daily Amount is intended to represent the Specified Percentage of Seller's daily Future Receipts. For as long as no Event of Default has occurred, once each calendar month, Seller may request that Buyer adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Seller agrees to provide Buyer any information requested by Buyer to assist in this reconciliation. No more often than once a month, Buyer may adjust the Daily Amount on a going-forward basis to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Buyer will give Seller notice five business days prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Daily Amount until any subsequent adjustment.

3. **Daily Amount Upon Default:** Upon the occurrence of an Event of Default, the Daily Amount shall equal 100%of all Future Receipts.

4. **Sale of Future Receipts (THIS IS NOT A LOAN):** Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement. Buyer is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Seller agrees that Buyer is entitled to audit Seller's accounting records upon reasonable Notice in order to verify compliance. Seller waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Seller asserts that this transaction is anything other than a sale of future receipts.

5. **Power of Attorney:** Seller irrevocably appoints Buyer as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Buyer from Seller, or in the case of a violation by Seller of this Agreement or the occurrence of an Event of Default under Section 15 hereof by Seller, including without limitation:
(i)   to obtain and adjust insurance;
(ii)  to collect monies due or to become due under or in respect of any of the Future Receipts;
(iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above;
(iv)  to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to direct payables to Buyer;
(v)   to file any claims or take any action or institute any proceeding which Buyer may deem necessary for the collection of any of the remaining Purchased Amount of the Future Receipts, or otherwise to enforce its rights with respect to delivery of the Purchased Amount; and/or
(vi)  to contact any Processor of Seller and to direct such Processor(s) to deliver directly to Buyer all or any portion of the amounts received by such Processor(s) and to provide any information regarding Seller requested by Buyer. Each Processor may rely on the previous sentence as written authorization of Seller to provide any information requested by Buyer. Each Processor is hereby irrevocably authorized and directed by Seller to follow any instruction of Buyer without inquiry as to Buyer's right or authority to give such instructions. Seller acknowledges the terms of the preceding sentence and agrees notto:

(a)     interfere with Buyer's instructions or a Processor's compliance with this Agreement or
(b)     request any modification thereto without Buyer's prior written consent.

**6.      Fees and Charges**: Other than the Origination Fee, if any, set forth above, Buyer is NOT CHARGING ANY ORIGINATION OR BROKER FEES to Seller. If Seller is charged another such fee, it is not being charged by Buyer. A list of all fees and charges applicable under this Agreement is contained in Appendix A.

**7.      Credit Report and Other Authorizations:** Seller and each of the Owners signing above authorize Buyer, its agents and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or  any  other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, (ii) obtain consumer and business credit reports on the Seller and any of its Owners, and (iii) to contact personal and business references provided by the Seller in the Application, at any time now or for so long as Seller and/or Owners continue to have any obligation owed to Buyer as a consequence of this Agreement or for Buyer's ability to determine Seller's eligibility to enter into any future agreement with Buyer.

**8.      Authorization to Contact Current and Prior Banks:** Seller hereby authorizes Buyer to contact any current or prior bank of the Seller in order to obtain whatever information it may require regarding Seller's transactions with any such bank. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Seller and any fees that may have been charged by the bank. In addition, Seller authorizes Buyer to contact any current or prior bank of the Seller for collections and in order to confirm that Seller is exclusively using  the Account identified above, or any other account approved by Buyer, for the deposit of all business receipts.

**9.      Financial Information:** Seller authorizes Buyer and its agents to investigate its financial responsibility and history, and will provide to Buyer any authorizations, bank or financial statements, tax  returns, etc.,  as  Buyer deems  necessary in its sole discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate. Seller waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement.

**10.     Transactional History:** Seller authorizes all of its banks and brokers and Payment  Card  processors  to provide Buyer with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program, or for collections upon an Event of Default.

**11.     Publicity:** Seller hereby authorizes Buyer to use its name in listings of clients and in advertising and marketing materials.

**12.     Application of Amounts Received by Buyer:** Buyer reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to Buyer from Seller prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.

**13.     Representations, Warranties and Covenants of Seller:**
**-13.1. Good Faith, Best Efforts and Due Diligence:** Seller will conduct its business in good faith and will use its best efforts to continue its business at least at its current level, to ensure that Buyer obtains the Purchased Amount.
**-13.2. Stacking Prohibited:** Seller shall not enter into any Seller cash advance or any loan agreement that relates to or involves its Future Receipts with any party other than Buyer for the duration of this Agreement. Buyer may  share  information regarding this Agreement with any third party in order to determine whether Seller is in compliance with this provision.
**-13.3. Financial Condition and Financial Information:** Any bank statements and financial statements of Seller that have been furnished to Buyer, and future statements that will be furnished to Buyer, fairly represent the financial condition of Seller at such dates, and Seller will notify Buyer immediately if there are material adverse changes, financial or otherwise, in the condition or operation of Seller or any change in the ownership of Seller. Buyer may request statements at any time during the performance of this Agreement and the Seller shall provide them to Buyer within five business days. Furthermore, Seller represents that all documents, forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and accurately reflect Seller's financial condition and results of operations. Seller further agrees to authorize the release of any past or future tax returns to Seller.
**-13.4. Governmental Approvals:** Seller is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.
**-13.5. Authority to Enter into This Agreement:** Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**-13.6. Change of Name or Location or Sale or Closing of Business:** Seller will not conduct Seller's businesses under any name other than as disclosed to Buyer or change any of its places of business without prior written consent of Buyer. Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without **(i)** the express prior written consent of Buyer, and **(ii)** the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer. Except as disclosed to Buyer in writing, Seller has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Seller agrees that until Buyer has received all of the Purchased Amount Seller will not voluntarily close its business on a temporarily basis for renovations, repairs, or any other purposes. This provision, however, does not prohibit Seller from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Seller. Prior to any such closure, Seller will provide Buyer ten business days notice to the extent practicable.

**-13.7. No Pending or Contemplated Bankruptcy:** As of the date Seller executes this Agreement, Seller is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under any Title of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within six months prior to the date of this Agreement. Seller further warrants that it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**-13.8. Seller to Maintain Insurance:** Seller will possess and maintain insurance in such amounts and against such risks as are necessary to protect its business and will provide proof of such insurance to Buyer upon demand.

**-13.9. Seller to Pay Taxes Promptly:** Seller will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

**-**any agreement the prohibits the sale or pledge of Seller's future receipts.

**-13.11. No Diversion of Receipts:** Seller will not permit any event to occur that could cause a diversion of any of Seller's Future Receipts from the Account to any other entity.

**-13.12. Seller's Knowledge and Representation:** Seller represents warrants and agrees that it is a sophisticated business entity familiar with the kind of transaction covered by the Agreement; it was represented by counsel or had full opportunity to consult with counsel.

<span style="color:red">***No UCC Filing unless merchant is in default***</span>

**14.**    <u>**Rights of Buyer:**</u>

**-14.1. Financing Statements Financing Statements and Security Interest:** Seller grants Buyer a security interest in all of Seller's present and future accounts, chattel paper, deposit accounts, personal property, assets and fixtures, general intangibles, instruments, equipment, inventory wherever located, and proceeds now or hereafter owned or acquired by Seller. Seller authorizes Buyer to file one or more UCC-1 forms consistent with the Uniform Commercial Code ("UCC") in order to give notice of this security interest and that the Purchased Amount of Future Receipts is the sole property of Buyer. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Buyer's right to collect same. Seller authorizes Buyer to debit the Account for all costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings.

**-14.10. No Violation of Prior Agreements:** Seller's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Seller is subject, including

**-14.2. Right of Access:** In order to ensure that Seller is complying with the terms of this Agreement, Buyer shall have the right to:

(i)    enter, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and or batch Seller's daily receipts to the Processor and to ensure that Seller has not violated any other provision of this Agreement, and

(ii)    Seller shall provide access to its employees and records and all other items as requested by Buyer, and

(iii)   have Seller provide information about its business operations, banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties.

**-14.3. Phone Recordings and Contact:** Seller agrees that any call between Buyer and Seller, and theiragents and employees may be recorded or monitored. Further, Seller agrees that

(i)    it has an established business relationship with Buyer, its employees and agents and that Seller may be contacted from time-to-time regarding this or other business transactions;

(ii)    that such communications and contacts are not unsolicited or inconvenient; and

(iii)   that any such contact may be made at any phone number, emails address, or facsimile number given to Buyer by the Seller, its agents or employees, including cellular telephones.

**15.**    <u>**Events of Default:**</u> The occurrence of any of the following events shall constitute an "Event of Default":

(a)   any act or omission by or on behalf of Seller that has the result of interfering with, or circumventing, the

payment to Purchaser of the Purchased Amount, including without limitation, adding or changing processors without Buyer's prior written consent, conducting business under an alternative name, making use of any depository accounts other than the Account without Buyer's prior written consent, encouraging customers to avoid making card payments or other act that results in a material decrease in the monthly number of deposits made and/or processing batches deposited to the Account that is disproportionate to any changes in the Future Receivables, or manipulating the use and form of business entities for the purpose of avoiding Seller's obligations hereunder;

(b)  Seller violates any representation, warranty, agreement, promise or covenant set forth in this Agreement;

(c)  Seller applies for, or enters into, any other form of financing without the prior written consent of Buyer;

(d)  Seller interferes with Buyer's access to electronic bank information for the Account;

(e)  Seller defaults under any of the terms, covenants and conditions of any other agreement with Buyer; or

(f)  Seller fails to provide timely notice to Buyer such that in any given calendar month there are two or more ACH transactions attempted by Buyer that are rejected by Seller's bank.

(g)  Seller completes a transaction that results in a change of control of Seller's business;

(h)  Seller becomes subject to any judgment, garnishment, or tax lien following the date of this Agreement;

(i)  Seller has an event of default under any other material agreement or contract; or

(j)  Seller fails to maintain an amount equal to twice the Daily Amount in the Account on any day during the term of this Agreement.

16.  **Remedies: If any Event of Default occurs, Buyer may proceed to protect and enforce its rights including, but not limited to, the following:**

**-16.1.** The Specified Percentage shall equal 100%. The full uncollected Purchased Amount plus all fees and charges (including legal fees) due under this Agreement will become due and payable in full immediately.

**-16.2.** Buyer may enforce the provisions of the Personal Guaranty of Performance against each Owner.

**-16.3.** Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Seller, Seller shall be liable for all of Buyer's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth below.

**-16.4.** This Agreement shall be deemed Seller's Assignment of Seller's Lease of Seller's business premises to Buyer**.** Upon an Event of Default, Buyer may exercise its rights under this Assignment of Lease without prior notice to Seller.

**-16.5.** Buyer may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Seller's bank account or otherwise for all sums due to Buyer.

**-16.6.** Seller shall pay to Buyer all reasonable costs associated with the Event of Default and the enforcement of Buyer's remedies, including but not limited to court costs and attorneys' fees.

**-16.7.** Buyer may exercise and enforce its rights as a secured party under the UCC.

**-16.8.** All rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

17.  **Modifications Agreements:** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Buyer.

18.  **Assignment:** Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

19.  **Notices:**

**-19.1. Notices from Buyer to Seller:** Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Seller by regular mail or by e-mail, at Buyer's option and Seller consents to such electronic delivery. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective upon mailing to Seller's address set forth in this Agreement.

**-19.2. Notices from Seller to Buyer:** Seller may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Seller to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

20.  **Binding Effect; Governing Law, Venue and Jurisdiction:** This Agreement shall be binding upon and inure to the benefit of Seller, Buyer and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Buyer which consent may be withheld in Buyer's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Buyer so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Buyer to transfer such proceeding to an Acceptable Forum.

**21.     Survival of Representation, etc:** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full.

**22.     Interpretation:** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**23.     Entire Agreement and Severability:** This Agreement embodies the entire agreement between Seller and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**24.     Facsimile Acceptance:** Facsimile signatures hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

**25.     Confidentiality:** The terms and conditions of this Agreement are proprietary and confidential unless required by law. Seller shall not disclose this information to anyone other than its attorney, accountant or similar service provider and then only to the extent such person uses the information solely for purpose of advising Seller and first agrees in writing to be bound by the terms of this Section. A breach entitles Buyer to damages and legal fees as well as temporary restraining order and preliminary injunction without bond.

**26.     Monitoring, Recording, and Solicitations:**
**-26.1. Authorization to Contact Seller by Phone:** Seller authorizes Buyer, its affiliates, agents and independent contractors to contact Seller at any telephone number Seller provides to Buyer or from which Seller places a call to Buyer, or any telephone number where Buyer believes it may reach Seller, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller incurs charges for receiving such communications.
**-26.2. Authorization to Contact Seller by Other Means:** Seller also agree that Buyer, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Seller. Seller expressly consents to conduct business by electronic means.

**27.     JURY WAIVER:** THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**28.     CLASS ACTION WAIVER:** THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT:

(I)   THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND
(II)  THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**29.     ARBITRATION:** IF BUYER, SELLER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF BUYER, SELLER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF BUYER, SELLER OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, BUYER, SELLER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). BUYER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH SELLER

AND THE GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE SELLER'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, BUYER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN BUYER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR NAF RULES. SELLER AND THE GUARANTOR AGREE THAT, BY ENTERING INTO HIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY, BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THATTHE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OR A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID.

**30.** __RIGHT TO OPT OUT OF ARBITRATION:__ SELLER AND GUARANTOR(S) MAY OPT OUT OF THIS CLAUSE. TO OPT OUT OF THIS ARBITRATION CLAUSE, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: BUYER – ARBITRATION OPT OUT, ACE FUNDING SOURCE LLC, 366 NORTH BROADWAY, JERICHO, NY 11753, ATTENTION: LEGAL DEPARTMENT.

**31.** __Service of Process:__ In addition to the methods of service allowed by the New York state civil practice law & rules ("CPLR"), seller hereby consents to service of process upon it by registered or certified mail, return receipt requested, service hereunder shall be complete upon seller's actual receipt of process or upon buyer's receipt of the return thereof by the united states postal service as refused or undeliverable. Seller must promptly notify buyer, in writing, of each and every change of address to which service of process can be made. Service by buyer to the last known address shall be sufficient, seller will have (30) calendar days after service hereunder is complete in which to respond. Furthermore, seller expressly consents that any and all notice(s), demand(s), request(s) or other communication(s) under and pursuant to this agreement for the purchase and sale of future receivables shall be delivered in accordance with the provisions of this agreement for the purchase and sale of future receivables.

**Seller:**  SUPERIOR LOGISTICS OHIO LLC

Agreed to by: _David Burkholder_ (Signature)       it's ___owner___ (title)

Guarantor:  DAVID  BURKHOLDER  (full name)       Signature: _David Burkholder_

Guarantor: _____ (full name)       Signature: _____

## <u>Appendix A – List of Fees and Charges</u>

In addition to the Purchased Amount of Future Receipts, the Agreement provides that the following fees shall be applied:

1. **Underwriting Fee** - $  <u>249.00</u>  Or up to 12% of Funding Amount

2. **Non-Sufficient Funds (NSF) Fee** - $ 35.00 each (Up to TWO TIMES ONLY before a default is declared)

3. **Stopped Fee** - $ 135.00

4. **ACH Processing Fee** - $ <u>395.00</u>

5. **UCC Filing Fee** - $ <u>195.00</u>   <span style="color:red">***No UCC Filing unless merchant is in default***</span>

6. **Default Fee** - $5,000.00

## **PERSONAL GUARANTY OF PERFORMANCE**

This Personal Guaranty of Performance (this "Guaranty") is executed as of __12/04/2019__, by
__DAVID BURKHOLDER_____(the "Guarantor"), for the benefit of
Ace Funding Source LLC ("Buyer"). Capitalized terms used herein, but not defined, shall have the meanings assigned
to them in the Purchase Agreement (as hereinafter defined).

### RECITALS

A.       Pursuant to that Agreement for the Purchase and Sale of Future Receipts (the "Purchase Agreement"), dated of even date herewith, between Buyer and __SUPERIOR LOGISTICS OHIO LLC_____ ("Seller"), Buyer has purchased Future Receipts of Seller.

B.       Buyer is not willing to enter into the Purchase Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees prompt and complete performance to Buyer of all of the obligations of Seller; and

C.       Guarantor will directly benefit from Buyer and Seller entering into the Purchase Agreement.

### **AGREEMENT**

As an inducement to Buyer to purchase the Future Receipts identified in the Purchase Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor does hereby agree as follows:

**1.       Defined Terms:** All capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement.

**2.       Guaranty of Obligations:** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of Seller's obligations under the Purchase Agreement.

**3.       Guarantor's Other Agreements:** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Seller to dispose, convey, sell or otherwise transfer, any material business assets of Seller without the prior written consent of Buyer, which may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor hereby agrees to pay all costs and attorney's fees incurred by Buyer in connection with any actions commenced by Buyer to enforce its rights or incurred in any action to defend its performance under the Purchase Agreement and this Guaranty. This Guaranty is binding upon Guarantor, and Guarantor's heirs, legal representatives, successors and assigns. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Seller and Buyer, or the existence of any defense, setoff or counterclaim which Seller may assert. Buyer is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Seller's obligations under the Purchase Agreement or otherwise modify, amend or change the terms of the Purchase Agreement. Guarantor is hereby notified that a negative credit report reflecting on his/her credit record may be submitted to a credit reporting agency if the terms of this Guaranty are not honored by the Guarantor.

**4.       Waiver; Remedies:** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Seller fails to perform any obligation under the Purchase Agreement, Buyer may enforce its rights under this Guaranty without first seeking to obtain performance for such default from Seller or any other guarantor.

**5.       Acknowledgment of Purchase:** Guarantor acknowledges and agrees that the Purchase Price paid by Buyer to Seller in exchange for the Purchased Amount is a purchase of the Purchased Amount and is not intended to be treated as a loan or financial accommodation from Buyer to Seller. Guarantor specifically acknowledges Buyer is not a lender, bank or credit card processor, and that Buyer has not offered any loans to Seller, and Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. Guarantor acknowledges the Purchase Price paid to Seller is good and valuable consideration for the sale of the Purchased Amount of Future Receipts.

**6.       Governing Law and Jurisdiction:** This Guaranty shall be governed by, and constructed in accordance with, the internal laws of the State of New York without regard to principles of conflicts of law. Except as provided in Section 9 of this Guaranty, Guarantor submits to the exclusive jurisdiction and venue of the state or federal courts

having jurisdiction over any city/county in the State of New York of any claims or actions arising, directly or indirectly, out of or related to this Guaranty. The parties stipulate that the venues referenced in this Agreement are convenient. The parties further agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

**7.     JURY WAIVER:** THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**8.     CLASS ACTION WAIVER:** THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT:
(I)     THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND
(II)    THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**9.     ARBITRATION:** IF BUYER, SELLER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF BUYER, SELLER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF BUYER, SELLER OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, BUYER, SELLER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). BUYER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH SELLER AND THE GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE SELLER'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, BUYER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN BUYER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR NAF RULES. SELLER AND THE GUARANTOR AGREE THAT, BY ENTERING INTO HIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY, BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OR A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID.

**10.    RIGHT TO OPT OUT OF ARBITRATION:** SELLER AND GUARANTOR(S) MAY OPT OUT OF THIS CLAUSE. TO OPT OUT OF THIS ARBITRATION CLAUSE, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: BUYER – ARBITRATION OPT OUT, ACE FUNDING SOURCE LLC, 366 NORTH BROADWAY, JERICHO, NY 11753, ATTENTION: LEGAL DEPARTMENT.

**11.    Service of Process:** In addition to the methods of service allowed by the New York state civil practice law & rules ("CPLR"), seller hereby consents to service of process upon it by registered or certified mail, return receipt requested, service hereunder shall be complete upon seller's actual receipt of process or upon buyer's receipt of the return thereof by the united states postal service as refused or undeliverable. Seller must promptly notify buyer, in writing, of each and every change of address to which service of process can be made. Service by buyer to the last known address shall be sufficient, seller will have (30) calendar days after service hereunder is complete in which to respond. Furthermore, seller expressly consents that any and all notice(s), demand(s), request(s) or other communication(s) under and pursuant to this agreement for the purchase and sale of future receivables shall be delivered in accordance with the provisions of this agreement for the purchase and sale of future receivables.

**12.    Severability:** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law.

**13.    Opportunity for Attorney Review:** The Guarantor represents that it has carefully read this Guaranty and has, or had a reasonable opportunity to, consult with its attorney. Guarantor understands the contents of this Guaranty and signs this Guaranty as its free act and deed.

**14.    Counterparts and Facsimile Signatures:** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original document for evidentiary purposes.

**For Individual Guarantors –**

Guarantor: __DAVID  BURKHOLDER_____        Signature: _____
                    (full name)

**For Individual Guarantors –**

Guarantor: _____        Signature: _____
                    (full name)

**For Corporate Guarantors (or other entities) –**

Guarantor: _____        it's    ___owner_____
                    (signature)                                 (official position)

**AUTHORIZATION AGREEMENT**
**FOR AUTOMATED CLEARING HOUSE TRANSACTIONS**

SUPERIOR LOGISTICS OHIO LLC _____("Seller") hereby authorizes Buyer ("Buyer") to present automated clearing house (ACH) debits to the following checking account in the amount of fees and other obligations due to Buyer from Seller under the terms of that Agreement for the Purchase and Sale of Future Receipts (the "Agreement") entered into between Seller and Buyer, as it may be amended, supplemented or replaced from time to time. In addition, if an Event of Default (as defined in the Agreement) occurs, Seller authorizes Buyer to debit any and all accounts controlled by Seller or controlled by any entity with the same Federal Tax Identification Number as Seller up to the total amount, including but not limited to, all fees and charges, due to Buyer from Seller under the terms of the Agreement. Seller also authorizes Buyer to debit more than the Daily Amount under the Agreement if Seller misses any required payments, and less than the Daily Amount if Buyer, in its sole discretion, deems it appropriate.

**Transfer Funds To/From:**

**Name of Bank:**          VINTON COUNTY NATIONAL BANK _____

**ABA Transit/Routing #:**   044210403 _____

**Checking Account #:**            _____

**This authorization is to remain in full force and effect until all obligations due to Buyer under the Agreement have been fulfilled.**

**Seller Information:**

**Seller's Name:** SUPERIOR LOGISTICS OHIO LLC _____

**Signature of Authorized Representative:** _____ *David Burkholder* _____
                                                    FF3C805F8E5C4D5...

**Print Name:**     DAVID  BURKHOLDER _____

**Title:** _____ owner _____

**Seller's Tax ID:** _   _____

**Date:** _____ 12/04/2019 _____

[Attach Voided Check Here]

Dear Seller,

Please fill out the form below with the access information for your bank account, please write legibly and indicate lower/upper case sensitivity.

Legal Name/ DBA: _____

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1: _____

Security Question/Answer 2: _____

Security Question/Answer 3: _____

Security Question/Answer 4: _____

Security Question/Answer 5: _____

Security Question/Answer 6: _____

Any other information necessary to access your account: _____

# Ace Funding Source LLC

## **Balance Transfer Form**

Merchant Legal Name ("Merchant"):   DAVID  BURKHOLDER
Merchant Title: owner
Business Legal Name ("Business"):SUPERIOR LOGISTICS OHIO LLC
DBA:  SUPERIOR LOGISTICS OHIO
Physical Address:
City:  LANCASTER
State:  OH
Zip:   43130

Date:  12/04/2019

Ace Funding Source LLC              ("Company")

Date of new secured agreement: 12/04/2019
Date of previous secured agreement:08/09/2019
Remaining RTR Balance: $314,500.00

To Whom It May Concern:

I, Merchant, on behalf of business, hereby authorize Company to debit the remaining RTR balance
which is currently due and owing to Company pursuant to the previous secured merchant
agreement, entered into by and between Company and business.

I acknowledge that as a result of the above-referenced debit, the amount paid to business by
Company pursuant to the new secured agreement will be reduced by the amount of the remaining
RTR.

Thank you,
By: _David Burkholder_____
FF98885F85664D5
Merchant Legal Name: DAVID  BURKHOLDER
Title: owner

# Exhibit B



| | |
|---|---|
| FS Number: | OH00237039602 |
| Date Filed: | 23 January 2020 |
| | 11:46:49 |

# UCC FINANCING STATEMENT

**FOR FILING OFFICE USE ONLY**

**NAME OF CONTACT AT FILER:**   CSC B2B User

**PHONE NUMBER:**   (800)858-5294

**EMAIL CONTACT AT FILER:**   FilingDept@Diligenz.com

**SEND ACKNOWLEDGEMENT TO:**   Diligenz
801 Adlai Stevenson Drive
Springfield
IL
62703

## DEBTOR INFORMATION

**ORGANIZATION'S NAME:**   SUPERIOR LOGISTICS OHIO LLC

**MAILING ADDRESS:**   2243 W FAIR AVE

**CITY:** Lancaster   **STATE:** OH   **POSTAL CODE:** 43130   **COUNTRY:** USA

**INDIVIDUAL'S SURNAME:**   BURKHOLDER   **FIRST PERSONAL NAME:**   DAVID

**ADDITIONAL NAME(S)/INITIAL(S):**   W   **SUFFIX:**

**MAILING ADDRESS:**   585 JERUSALEM RD SE

**CITY:** Bremen   **STATE:** OH   **POSTAL CODE:** 43107   **COUNTRY:** USA

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME:**   ACE FUNDING SOURCE LLC

**MAILING ADDRESS:**   366 NORTH BROADWAY

**CITY:** Jericho   **STATE:** NY   **POSTAL CODE:** 11753   **COUNTRY:** USA

## COLLATERAL INFORMATION

**This financing statement covers the following collateral:**

ASSETS INCLUDING PROCEEDS AND PRODUCTS
ACCOUNT(S) INCLUDING PROCEEDS AND PRODUCTS
CHATTEL PAPER INCLUDING PROCEEDS AND PRODUCTS
INVENTORY INCLUDING PROCEEDS AND PRODUCTS
EQUIPMENT INCLUDING PROCEEDS AND PRODUCTS
NEGOTIABLE INSTRUMENTS INCLUDING PROCEEDS AND PRODUCTS
GENERAL INTANGIBLE(S) INCLUDING PROCEEDS AND PRODUCTS

## FILING TYPE

Public Finance: No

Transmitting Utility: No

Manufactured Home: No

Non-Ucc Filling: No

Agriculture Lien: No

## ALTERNATIVE DESIGNATION

Licensee/Licensor: No

Consignee/Consignor: No

Bailee/Bailor: No

Seller/Buyer: No

## PACKET NUMBER

76275156

# EXHIBIT 3

Case 2:20-cv-12059-TGB-APP   ECF No. 4, PageID.199   Filed 08/06/20   Page 62 of 66

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 5, 2020.

Selected Entity Name: TOPROCK FUNDING LLC

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | TOPROCK FUNDING LLC |
| **DOS ID #:** | 5599871 |
| **Initial DOS Filing Date:** | AUGUST 06, 2019 |
| **County:** | KINGS |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

THE LIMITED LIABILITY COMPANY
5314 16TH AVENUE, SUITE 54
BROOKLYN, NEW YORK, 11204

**Registered Agent**

NONE

This office does not require or maintain information
regarding the names and addresses of members or
managers of nonprofessional limited liability
companies. Professional limited liability companies
must include the name(s) and address(es) of the
original members, however this information is not
recorded and only available by viewing the certificate.

***Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|

No Information Available

*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| AUG 06, 2019 | Actual | TOPROCK FUNDING LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

Loading...

| | | | |
|---|---|---|---|
| File Number: | **4983960** | Incorporation Date / Formation Date: | **5/17/2011** (mm/dd/yyyy) |
| Entity Name: | **CHROME CAPITAL LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **NORTHWEST REGISTERED AGENT SERVICE, INC.** | | |
| Address: | **8 THE GREEN, STE B** | | |
| City: | **DOVER** | County: | **Kent** |
| State: | **DE** | Postal Code: | **19901** |
| Phone: | **302-581-4070** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ◯ Status ◯ Status,Tax & History Information

[ Submit ]

[ View Search Results ]     [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through August 5, 2020.

Selected Entity Name: CHROME CAPITAL LLC
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | CHROME CAPITAL LLC |
| **DOS ID #:** | 4320377 |
| **Initial DOS Filing Date:** | NOVEMBER 15, 2012 |
| **County:** | ALBANY |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
NORTHWEST REGISTERED AGENT LLC
90 STATE STREET, STE. 700
OFFICE 40
ALBANY, NEW YORK, 12207

**Registered Agent**

NONE

This office does not require or maintain information
regarding the names and addresses of members or
managers of nonprofessional limited liability
companies. Professional limited liability companies
must include the name(s) and address(es) of the
original members, however this information is not
recorded and only available by viewing the certificate.

Case 2:20-cv-12059-TGB-APP    ECF No. 4, PageID.203    Filed 08/06/20    Page 66 of 66

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| NOV 15, 2012 | Actual | CHROME CAPITAL LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us