UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FRANKLIN CAPITAL FUNDING, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **ACE FUNDING SOURCE, LLC**, <br><br> Defendant. | 2:20-CV-12059-TGB-APP <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 4) AND DISMISSING THE CASE WITHOUT PREJUDICE FOR LACK OF PERSONAL JURISDICTION** |

   This is a dispute over priority rights to financing payments. Plaintiff Franklin Capital Funding alleges that it possesses the most senior security interest in the collateral of non-party Superior Logistics. Plaintiff alleges that Defendant Ace Funding Source tortiously interfered with its security interest when it entered into a subsequent financing agreement and began to withdraw collateral from Superior Logistics' account. The instant action was filed against Defendant on April 3, 2020 in the Circuit Court for the County of Oakland. ECF No. 1-1. Defendant removed the case to this Court on July 30, 2020. ECF No. 1.

   This case is now before the Court on Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6). ECF No. 4. For the reasons outlined below, the Court will **GRANT**

Defendant's Motion to Dismiss (ECF No. 4) because this Court lacks personal jurisdiction over Defendant Ace.

## I. BACKGROUND

Non-parties TopRock Funding LLC ("TopRock") and Superior Logistics Ohio LLC ("Superior") entered into a revenue purchase agreement dated November 10, 2019. ECF No. 1-1, PageID.9. Subsequently, on December 12, 2019, TopRock filed a UCC-1 financing statement ("First Financing Statement") with the State of Ohio, which Plaintiff alleges covered "substantially all of Superior's assets, including proceeds from sales and receivables." ECF No. 1-1, PageID.9.

On March 2, 2020, Plaintiff Franklin purchased the obligations owed to TopRock[1] by Superior. ECF No.1-1, PageID.9. The details of the purchase and assignment are outlined in an assignment agreement. *See* ECF No. 1-1, PageID.63-65. According to the Agreement all claims, rights, and actions against Superior were sold, assigned, and transferred

---

[1] While this is how Plaintiff's complaint describes the purchase, the assignment agreement describes Chrome Capital LLC as the "Assignor" and does mention or discuss TopRock Funding LLC. *See* ECF No. 1-1, PageID.63. Plaintiff's complaint alleges that TopRock Funding LLC is also known as Chrome Capital, LLC, and that together these two entities are known as "TopRock." ECF No. 1-1, PageID.9. Defendant disputes this assertion and instead claims that TopRock Funding LLC and Chrome Capital LLC are distinct corporations. During oral argument, Plaintiff asserted that these are closely related companies that transfer assets between each other. However, Plaintiff conceded that there are no documents currently on the record which explain this relationship.

to Plaintiff Franklin. The Agreement also assigns Plaintiff Franklin "all of its right, title, and interest under its agreements with Superior" including those against "any third party" arising from the obligations of the Assignor's agreement with Superior. ECF No. 1-1, PageID.9. On March 4, 2020, pursuant to the agreement, TopRock assigned its First Financing Statement to Franklin in an assignment filed with the State of Ohio. ECF No. 1-1, PageID.10. *See* ECF No. 1-1, PageID.72.

On March 4, 2020, Plaintiff Franklin also made an additional $1,700,000 loan to Superior. *See* ECF No. 1-1, PageID.75-100. The loan agreement outlined Superior's agreement to "[k]eep its assets, whether now owned or hereafter acquired, free of any lien, charge, or claim." ECF No. 1-1, PageID.11. As security for the loan, on March 4, 2020 Superior executed a Continuing Security Agreement, which granted Plaintiff Franklin a security interest in the following collateral:

> (a) all of [Superior's] Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights ... , Software ...
> (b) all present and future insurance claims relating to any of the above;
> ( c) all Goods, Instruments ... , Documents ... , policies and certificates of insurance, Deposit Accounts, and money or other property ... which are now or later in possession of [Franklin], or to which [Franklin] now or later controls possession by documents or otherwise;
> ( d) all present and future books, records, and data of [Superior] relating to any of the above; and
> ( e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting

> Obligations and rights arising out of, any of the above, including but not limited to stock rights, subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by [Superior].

ECF No. 1-1, PageID.102.

Plaintiff Franklin alleges that the security interest was perfected under a UCC-1 Financing Statement ("Second Financing Statement"), which was filed on February 18, 2020 with the state of Ohio. ECF No. 1-1, PageID.13. See ECF No. 1-1, PageID.117-18. The Second Financing Agreement outlined the collateral for the loan and stated that "[a]ny attempt by a third party to exercise dominion or control over the collateral described in the financing statement would constitute conversion of secured party's collateral." ECF No. 1-1, PageID.13-14. Accordingly, Plaintiff Franklin contends that the Second Financing Statement provided "express notice" that any third party interference with Franklin's security interest rights "would constitute tortious interference and/or conversion." ECF No. 1-1, PageID.14.

Superior also sought and obtained additional funding from Defendant Ace. Plaintiff alleges that on or about January 27, 2020, Superior obtained a merchant cash advance from Defendant Ace. ECF No. 1-1, PageID.14. According to Plaintiff's complaint, as a result of this

cash advance, Defendant Ace began various forms of debt collection including debiting Superior's accounts, directing Superior's customers to make payments directly to Defendant Ace, and threatening to "send the martial" to collect the funds. ECF No. 1-1, PageID.14.

But, Defendant Ace claims that they could not have had knowledge of or notice of the loan Plaintiff Franklin gave to Superior Logistics, or its security interest, because "both came ***after*** Ace Funding entered into its contract with Superior Logistics, Superior Logistics granted it a security interest, and Ace Funding filed its UCC-1 Financing Statement." ECF No. 4, PageID.148 (emphasis in original). According to Defendant Ace, on December 4, 2019, Superior Logistics and Ace Funding entered into an agreement for the purchase and sale of future receipts. ECF No. 4, PageID.149. See ECF No. 4, PageID.181. Pursuant to the agreement, Defendant Ace was to obtain the receipts it purchased by making withdrawals from a bank account designated by Superior Logistics. Additionally, Defendant Ace contends Superior Logistics granted Ace Funding "a security interest in all of its assets as part of the transaction." ECF No. 4, PageID.150. On January 23, 2020, Defendant Ace filed a UCC-1 Financing Statement to perfect its security interests in the state of Ohio. ECF No. 4, PageID196-97.

Despite Ace's agreements and UCC financing statements, Plaintiff Franklin asserts that it holds the most senior security interest in the relevant assets. Plaintiff contends that the First Financing Statement,

5

subsequent assignment, and Second Financing Statement provided Defendant Ace with constructive notice that "any interference by third parties with Franklin's secured party's rights would constitute tortious interference and/or conversion." ECF No. 1-1, PageID.15. According to Plaintiff, because Franklin held the senior security interest Defendant Ace's debt collection not only intercepted the collateral belonging to Plaintiff, but also converted proceeds. ECF No. 1-1, PageID.15.

As a result of these allegations, Plaintiff's complaint brings claims against Defendant for (1) declaratory judgment as to priority in collateral, (2) tortious interference with a contractual relationship, (3) tortious interference with future business expectations, (4) conversion, and (5) temporary, preliminary, and permanent injunctive and declaratory relief. ECF No. 1-1, PageID.16-22.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), a party may assert lack of personal jurisdiction as a defense. In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the court's authority over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). *See also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where subject matter jurisdiction is based on diversity of citizenship, federal courts look to state law to determine personal jurisdiction. Fed. R. Civ. P. 4(k)(1). *See also Daimler AG v. Bauman*, 571

U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.").

"Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one." *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F.Supp.2d 806, 810 (E.D. Mich.2000). Stated differently, Michigan's long-arm statute allows the exercise of personal jurisdiction to the full extent permitted under the Constitution. Therefore, the Court must determine whether the exercise of jurisdiction complies with the limits imposed by the Due Process Clause.

Michigan law recognizes two bases for personal jurisdiction over a corporation: (1) general, and (2) specific (called "limited personal jurisdiction" in state law parlance). *See* Mich. Comp. Laws Ann. § 600.711, 600.715. A court has general jurisdiction over a corporation where the defendant's contacts within the forum "are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alteration in original). As to specific jurisdiction, the inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal punctuation and citations omitted). For a court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*

### III. ANALYSIS

Defendant contends that this Court does not have personal jurisdiction over Ace Funding. ECF No. 4, PageID.153. Plaintiff, however, alleges that the Court has both general and specific jurisdiction over Defendant Ace. For the reasons discussed below, Defendant's motion to dismiss will be granted because the Court lacks personal jurisdiction over Defendant Ace. Because this is a sufficient basis for granting the motion and dismissing the case, the Court declines to address the other arguments presented in Defendant's briefing.

#### a. General Jurisdiction

Plaintiff Franklin contends that this Court may exercise general jurisdiction over Defendant Ace. "General jurisdiction allows a plaintiff to sue a defendant 'on any and all claims,' regardless of the connection (or lack thereof) between the claim and the forum." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 138). The pertinent inquiry in determining whether the court may exercise general jurisdiction is "whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state.'" *Daimler AG*, 571 U.S. at 139 (internal quotations and citation omitted).

Plaintiff argues that the Court has general jurisdiction over Defendant Ace because Defendant Ace has allegedly solicited business from Michigan residents through its website and established "long-term

8

lending relationships with Michigan residents" as evidenced by Ace's UCC filings and litigation within Michigan courts. ECF No. 5, PageID.222. The Court finds this evidence is insufficient to establish general jurisdiction over Defendant Ace.

The kinds of activities Plaintiff identifies Defendant Ace conducting in Michigan are well short of what would be needed to demonstrate "continuous and systematic contacts." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. First, Plaintiff directs the Court to 70 UCC statements filed by Ace that evidence a security interest in assets located in Michigan or assets owned by Michigan residents. ECF No. 5, PageID.219-220. Plaintiff contends that these UCC filings provide evidence that Defendant Ace was "soliciting and procuring sales and purchases," which is a factor courts consider when evaluating general jurisdiction. ECF No. 5, PageID.222. However, in *Daimler AG v. Bauman*, the Supreme Court determined that significant sales presence is not enough to confer general personal jurisdiction because if it was, general jurisdiction "would presumably be available in every other State in which [the defendant's] sales are sizable." 571 U.S. at 139. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139, n.20. Therefore, merely showing that Defendant Ace has done business in Michigan through the creation of lending relationships is not sufficient to show continuous and systematic contacts that would make Defendant Ace effectively "at home" in the

9

forum. Plaintiff's reference to *Helzer v. F. Joseph Lamb Co.*, is also unavailing on this point because the case was decided long before the Supreme Court's guidance in *Goodyear* and *Daimler*, and the facts are distinguishable. 171 Mich.App. 6 (Mich. Ct. App. 1988). In *Helzer*, the corporation not only bought and sold parts in Michigan, but "sen[t] a company courier to Michigan on a daily basis, and ha[d] a direct computer link-up with its Michigan parent corporation." *Id.* at 11. There is no evidence that Defendant Ace had such daily contacts here.

Next, Plaintiff argues that Defendant Ace has utilized its website to solicit business from Michigan residents. Plaintiff argues that the internet contacts Defendant Ace receives through the "interactivity" of its websites also establishes general jurisdiction. ECF No.5, PageID.221-22. The Court finds no authority to support this proposition, and the case law states the opposite. *See Negash v. DeVry Univ.*, Case No. 17-10256, 2018 WL 1570625, at *4 (E.D. Mich. Mar. 30, 2018) (finding "internet presence alone is not a sufficient basis for general jurisdiction."). Plaintiff directs the Court to *Audi AG and Volkswagon of Am., Inc. v. D'Amato*, to support their argument that the "interactivity of a website" is a determinative factor in establishing general jurisdiction. 341 F.Supp.2d 734, 742 (E.D. Mich. 2004). But, in *Audi AG* the court found that the interactivity of the corporation's website was sufficient for a court to exercise *specific* jurisdiction, also called limited personal jurisdiction in the state cases. *Id.* at 741. The court did not discuss or apply this

10

principle to *general* jurisdiction and, as discussed above, the standards for the two types of personal jurisdiction are distinct.

Beyond the lack of case law, the extent to which Defendant Ace utilized its website to "solicit" business is in dispute. Defendant submits evidence that Ace Funding's website only allows interested parties to submit an inquiry, but not actually to apply for any loan or enter into any agreements. Defendant says that any contracts entered into relating to assets—even those in Michigan—arise under New York contract law. ECF No. 6, PageID.345. Defendant also argues that most of its business comes from brokers or independent sales organizations—not from any solicitation by Ace Funding agents in person or through the website. In sum, Defendant Ace's website and the activity conducted through it, is insufficient to establish general jurisdiction because it fails to demonstrate that Defendant had "continuous and systematic contacts" in Michigan.

Further, even if Plaintiff did adequately allege "continuous and systematic contacts," this alone is insufficient for general jurisdiction. The correct inquiry under *Goodyear* is whether the contacts in a forum state are *so* continuous and systematic as to render the company *at home* in the forum state. *Daimler*, 571 U.S. at 139. "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and principle place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG*, 571 at 139, n. 19).

Here, Defendant Ace Funding is a New York corporation and its principal place of business is in Jericho, New York. ECF No. 4, PageID.178. Accordingly, Michigan is not the "paradigm" forum where Ace Funding is "at home."

Our inquiry does not end here, however, as "[t]he exercise of general jurisdiction is not limited to these forums; in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co.*, 137 S. Ct. at 1158 (internal quotations omitted). The Supreme Court has suggested that *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) exemplifies such an "exceptional case." *Id.* In *Perkins*, the Court determined a foreign corporation located in the Philippines was subject to general jurisdiction in Ohio when war required the general manager and owner of the company to relocate to Ohio, where he continued conducting the business on behalf of the company. *Perkins*, 342 U.S. at 448. Nothing remotely analogous has been alleged here.

Plaintiff has offered no evidence to support a finding that this is "an exceptional case," or any authority to support the proposition that Defendant Ace's contacts are sufficient to establish it was "at home" in Michigan. There is no evidence that Defendant Ace has physical locations, employees, or officers in Michigan. There is no evidence that Defendant Ace has bank accounts or conducts daily corporate activities in Michigan. While Plaintiff offers proof that Defendant has filed

multiple UCC debtor financing statements and has brought one case within Michigan courts, this evidence merely confirms that Defendant Ace has done some in-state business in Michigan. This is insufficient for purposes of establishing general jurisdiction. *BNSF Ry. Co.*, 137 S. Ct. at 1559 (finding corporation was not "so heavily engaged in activity" in the forum state as to render it "essentially at home" even though corporation had "over 2,000 miles of railroad track and more than 2,000 employees in the [forum state]." *See also SRS Techs., LLC v. Nat'l Minority Trucking Ass'n, Inc.*, No. 17-1320, 2018 WL 925847, at *2 (E.D. Mich. Feb. 16, 2018); *Pilipovic v. Driver*, Case No. 19-12033, 2019 WL 4511678, at *1 (E.D. Mich. Sept. 19, 2019) ("Merely conducting business in the forum state does not necessarily render a corporation 'at home' there.").

In sum, Plaintiff has failed to bear its relatively light burden of showing that Defendant Ace had sufficient business activities in Michigan to "render [it] essentially at home in the forum state." *Daimler AG*, 571 U.S. at 119 (alteration in original). Accordingly, the Court does not have general jurisdiction over Defendant Ace.

### b. Specific Jurisdiction

The Court next turns to Plaintiff's claim that the Court may exercise specific jurisdiction over Defendant Ace. Specific jurisdiction is dependent on "defendant's case-related contacts to the jurisdiction." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Stated differently, under specific jurisdiction, a

plaintiff may sue a defendant "only on claims that arise out of the defendant's activities in the forum state." *Maxitrate*, 617 F. App'x at 408. The Sixth Circuit has evaluated whether a defendant has sufficient "minimum contacts" with the forum state under a three prong test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (internal quotations omitted). In sum, jurisdiction depends on Defendant Ace's contacts with Michigan as it relates to the cause of action in the complaint.

The Court need not assess the first and third prong of the test because it is clear that the second prong of the test is not met. To find specific jurisdiction "the cause of action must arise from the defendant's activities there." *Gerber*, 649 F.3d at 518. Plaintiff alleges that the second prong is met because Defendant Ace's "actions had consequences in Michigan resulting in harm to Franklin, a Michigan resident." ECF No. 5, PageID.225. But both the Supreme Court and courts in this district have rejected this theory of specific jurisdiction. *Walden,* 571 U.S. at 290.

When assessing specific jurisdiction, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."

14

*Walden*, 571 U.S. at 290. "To find otherwise would 'improperly attribute[ ][the] plaintiff's forum connections to the defendant[s] and make [ ] those connections 'decisive' in the jurisdictional analysis." *Zellerino v. Roosen*, 118 F.Supp.3d 946, 952 (E.D. Mich. 2015) (quoting *Walden*, 571 U.S. at 289) (alternations in original). In *Walden*, the Supreme Court outlined two key principles with regard to the types of contacts necessary to establish specific jurisdiction. First, the relationship between the defendant and the forum "must arise out of contacts that the 'defendant himself' creates with the forum State." 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Second, the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285. Under this principle, "the plaintiff cannot be the only link between the defendant and the forum." *Id*. As summarized by the court in *Zellerino v. Roosen*, the Supreme Court's holding in *Walden* make it clear that specific jurisdiction may not "exist over a defendant in a forum solely because the effects of his intentional act are felt there." 118 F.Supp.3d at 951.

Applying those principles here, it is clear that Defendant Ace's conduct—entering into a contract with a company in Ohio to purchase revenue and withdrawing funds from that company's bank account in Ohio—may not form the basis for Defendant to be sued in a Michigan court. ECF No. 4, PageID.158. Plaintiff does not allege that any of

15

Defendant Ace's challenged conduct took place in Michigan. Additionally, the exhibits Plaintiff provides with regard to Defendant Ace's general business activities in Michigan have no bearing on this analysis because the UCC statements and Michigan litigation Plaintiff references have nothing to do with *this* cause of action. *See Goodyear Dunlop Tires Operations, S.A.*, 564 at 919 ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the *very controversy* that establishes jurisdiction.") (internal citations and punctuation omitted) (emphasis added). And, while an employee of Ace allegedly sent a text message that contained aggressively rude language about Plaintiff Franklin ("I told Franklin Funding to f*** off," ECF No. 5, PageID.217), the relevant inquiry for specific jurisdiction "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285, 286 (noting that in the intentional torts content, "it is likewise insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts.'"). The case law is clear "that mere injury to a forum resident is not a sufficient connection to the forum," and that is all Plaintiff has alleged here. *Id.* at 290 (referencing *Calder v. Jones*, 465 U.S. 783 (1984)).

In sum, Plaintiff has only alleged that the impact of Defendant Ace's actions, and not Defendant's actions themselves, were felt in Michigan. Therefore, Plaintiff has failed to establish the necessary

16

second prong of specific jurisdiction, which requires that the cause of action arise from the defendant's activities in the forum state.

Therefore, because Plaintiff has failed to establish that the Court may exercise personal jurisdiction—general or specific—over Defendant Ace consistent with due process, the Court must dismiss the case against them.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 4) is **GRANTED** under Fed. R. Civ. P. 12(b)(2). The Court will not address Defendant's arguments under Rules 12(b)(3) and 12(b)(6) because it has no personal jurisdiction over Defendant Ace Funding.

It is further **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated: March 31, 2021         s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE